697 So.2d 22 (1997)
STATE of Louisiana
v.
Vernon Carl MITCHELL.
No. 96 KA 1896.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*23 Bernard E. Boudreaux, Jr., District Attorney by Thomas C. Senette, Curtis Sigur, James R. McClelland, Assistant District Attorneys, Franklin, for AppelleeState of Louisiana.
M. Craig Colwart, Indigent Defender, Franklin, for DefendantAppellantVernon Carl Mitchell.
Before WHIPPLE and FITZSIMMONS, JJ., and TYSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
Vernon Karl[2] Mitchell was charged by amended bill of information with first degree robbery (La. R.S. 14:64.1) and aggravated escape (La. R.S. 14:110(C)). Defendant pled not guilty and, after trial by jury, was convicted as charged on the first count and was convicted of the responsive offense of simple escape on the second count. Defendant was subsequently billed as an habitual offender on the first degree robbery conviction. Defendant admitted his status as a third offender at the sentencing hearing. Thereafter, the trial court sentenced defendant on the first degree robbery conviction as a third felony offender to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The trial court sentenced him to serve a term of five years at hard labor on the simple escape conviction to be served consecutively to any other sentence and with credit for time served. Defendant has appealed, urging in a single assignment of error that the life sentence imposed by the trial court was excessive.

Facts
On October 22, 1995, Steven Darce was washing his car at a car wash in Franklin, Louisiana. He was approached by defendant, who was riding a bicycle. The defendant asked Mr. Darce how much money he had. After stating that he did not know how much money he had, Mr. Darce testified that defendant had "something sticking out of his shirt which I thought was a gun...." Then, the defendant demanded all of Mr. Darce's money and took a black Nike baseball cap that Mr. Darce was wearing. Mr. Darce reportedly had $80.00 in his wallet, which was stolen. The defendant informed Mr. Darce that if he told anyone, he would be hurt.
Detective Richard Rivere of the Franklin Police Department testified that he investigated the robbery of Steven Darce. Mr. Darce identified defendant from a photo lineup. Ultimately, defendant was stopped on October 24, 1995, by law enforcement officers while riding his bicycle and wearing a black Nike baseball cap.
Detective Rivere questioned defendant and proceeded to book him. When Detective Rivere attempted to place defendant in the holding cell, defendant said, "You're not going to put me in the holding cell." A struggle ensued, during which defendant bit Detective Rivere on the left wrist. Ultimately, defendant escaped from police custody and ran several blocks before being captured. Detective Rivere sought medical treatment for the bite wound. The detective worried about the risk of infection and diseases, such as AIDS and hepatitis.

Excessive Sentence
In his first and only assignment of error, defendant contends that his life sentence was excessive because it is disproportionate to the crime he committed. Defendant does not contest the conviction or sentence for first degree robbery or simple escape.
*24 The state argues, in brief, that this court should not consider the issue raised by defendant because defense counsel failed to properly preserve the issue. La.Code Cr. P. art. 881.1, states, in pertinent part:
A.(1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
* * * * * *
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
This court has held that under the clear language of La.Code Cr. P. art. 881.1(D), the failure to file or make a motion to reconsider sentence precludes defendant from raising an excessiveness argument on appeal. See State v. Duncan, 94-1563, p. 2 (La.App. 1st Cir. 12/15/95); 667 So.2d 1141, 1143 (en banc).
However, at defendant's sentencing on April 3, 1996, defense counsel made the following statement after the trial court's pronouncement of the life sentence:
Please note our objections for the record, and also let this serve as our oral notice of our intent to appeal. We would ask forWe will submit a written order.
Initially, we note that defense counsel's oral objection and notice of an intent to appeal at the conclusion of the sentencing proceeding could be construed as an attack on the sentence as imposed by the trial court. Although defense counsel did not submit a written motion to reconsider or state any specific grounds for attacking the instant sentence, the foregoing statement arguably could be considered as a "bare claim of excessiveness" under State v. Mims, 619 So.2d 1059, 1060 (La.1993). Thus, this court will consider defendant's bare claim of excessiveness.
Louisiana Constitution article I, § 20, prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it shocks a reasonable person's sense of justice.
In the instant case, defendant was convicted of first degree robbery, which carries a sentence between three and forty years. Defendant conceded his status as a third felony offender. La. R.S. 15:529.1(A)(1)(b)(ii)[3] provides the following punishment:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Thus, the life sentence imposed by the trial court was the minimum mandatory sentence allowed by statute.
The legislature has the unique responsibility to define criminal conduct and to provide for the penalties to be imposed against persons engaged in such conduct. The penalties provided by the legislature reflect the degree to which the criminal conduct affronts society. Courts must apply these penalties unless they are found to be unconstitutional. State v. Baxley, 94-2982, p. 10 (La.5/22/95); 656 So.2d 973, 979. Imposition *25 of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). Thus, imposition of a minimum sentence required under a particular statute might also violate a defendant's constitutional protection against excessive punishment. See State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993).
In Dorthey, the Louisiana Supreme Court considered a constitutional challenge to the Habitual Offender statute. Therein, the court observed that it is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Furthermore, courts are charged with applying these punishments unless they are found to be unconstitutional. State v. Dorthey, 623 So.2d at 1278. The Supreme Court provided in Dorthey that the judiciary maintains the distinct responsibility for reviewing sentences imposed in criminal cases for constitutional excessiveness. Thus, if a trial court determines that the habitual offender punishment mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime", then the court has the option, indeed the duty, to reduce such a sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d at 1280 (citations omitted).
Defendant argues in brief that his sentence is disproportionate to the crime committed under the analysis of Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, in Harmelin v. Michigan, 501 U.S. 957, 959, 111 S.Ct. 2680, 2683, 115 L.Ed.2d 836 (1991), the Supreme Court of the United States cast serious doubt on the viability of the Solem v. Helm analysis. The Supreme Court reexamined this area of the law and upheld a sentence of life imprisonment without possibility of parole for a defendant convicted of possessing more than 650 grams of cocaine. In doing so, although a majority could not agree on the exact standard to employ, the Supreme Court limited the instances in which a complete Solem v. Helm proportionality analysis is required.[4] As a result, courts are required to conduct the proportionality analysis required by Solem v. Helm only if, after comparing the gravity of the offense against the severity of the sentence, the court infers that the sentence is "grossly disproportionate" to the offense. State v. Wimberly, 618 So.2d 908, 913 (La.App. 1st Cir.), writ denied, 624 So.2d 1229 (La.1993) (citation omitted).
The court in Baxley indicated that the factors outlined in State v. Telsee, 425 So.2d 1251, 1253-54 (La.1983), are useful in determining whether or not a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime. These factors include the nature of the offense and the offender,[5] a comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the *26 punishment, and a comparison of the punishment provided for this crime in other jurisdictions. See State v. Baxley, 94-2982 at 10; 656 So.2d at 980; State v. Davis, 94-2332, p. 13 (La.App. 1st Cir. 12/15/95); 666 So.2d 400, 408, writ denied, 96-0127, (La.4/19/96); 671 So.2d 925.
The trial court noted that it had the responsibility under Dorthey to review the sentence for excessiveness. The trial court provided written reasons for sentencing, which specifically rejected the Dorthey excessiveness finding. The court noted that defendant was convicted of stealing money and a cap from a juvenile by use of force or intimidation, where defendant led the juvenile victim to believe that defendant was armed. The trial court noted that defendant had previous felony convictions. He was convicted of forgery and sentenced to three years at hard labor. That sentence was suspended, and defendant placed on supervised probation. Thereafter, defendant was convicted of possession of cocaine, while on probation. He was sentenced to three years at hard labor, to be served consecutively to the forgery sentence.
In his written reasons for sentencing, the trial court judge further stated:
In the case of Vernon Mitchell, this Court finds that the legislatively mandated life sentence in this particular case is fair, just and reasonable and makes a "measurable contribution to acceptable goals of punishment." (See State v. Dorthey, 623 So.2d at page 1276). The sentence is not the "purposeful imposition of pain and suffering" but, to the contrary, because of the defendant's criminal history and the propensity of the defendant to continue committing crimes while out on probation and parole, this case typifies the very reason why the "Three Strikes and You're Out" law was passed in the first place.
While it would not seem that the jurisprudence requires that this Court state any reasons whatsoever for sentencing this particular defendant, in the event that this defendant lodges a constitutional challenge to the excessiveness of the sentence, this Court feels constrained to do so.
Vernon Mitchell is well known to this Court. He is tall, strong, can be menacing, and throughout the entirety of the proceedings has shown absolutely no remorse whatsoever, either by facial expression or otherwise. The evidence at the trial showed that he picked on a fifteen year old boy who is roughly half his size, threatened and intimidated him and led the young man to believe that he would be seriously harmed if he didn't turn over his money. Mr. Mitchell led the young man to believe that he was armed.
* * * * * *
At the time of the sentencing, the victim's father, Richard Darce, testified that he had received life threats over the telephone from a young man named Jason. Telephone records introduced during the trial as well as a statement of Vernon Mitchell introduced during the trial, corroborated by the testimony of Monica Williams, indicated that Vernon Mitchell was seeing Monica Williams at the time of the offense. Monica Williams had a brother named Jason and the telephone records indicated that the call came from the home that Monica Williams and Vernon Mitchell were occupying. This Court feels that the death threats were made from the Mitchell/Williams home and were made at the request, it is felt, of Vernon Mitchell. Additional telephone records from the jail introduced at the trial corroborate the testimony of the victim and the victim's family that they continued to receive harassing and threatening phone calls from the jail from Vernon Mitchell. There is no doubt in this Court's mind that Vernon Mitchell was capable of carrying out those threats.
The trial court stated that this crime was not an isolated incident, but seemed to be a long-standing pattern of behavior whereby defendant would either threaten or trick young high school students to give him money. The trial court noted that one such juvenile wore a "wire" during a conversation with defendant where defendant threatened to have him or his family members shot with a "Tec 9" unless he continued to give money to the defendant.
*27 In State v. Compton, 96-2176, p. 2-3 (La. App. 4th Cir. 10/23/96); 683 So.2d 853, 854, the Fourth Circuit granted writs and ordered a third felony offender re-sentenced where the trial court failed to provide sufficient reasons for departing from the statutorily mandated life sentence under the Habitual Offender statute. Defendant had pled guilty to possession of a stolen vehicle and access device fraud; previous convictions included purse snatching and theft. Compton, 96-2176 at p. 2-3, 683 So.2d at 854.
The life sentence imposed by the trial court was not grossly disproportionate to the defendant's crimes. First degree robbery is a serious offense involving "force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La. R.S. 14:64.1. The robbery and use of force or intimidation by the defendant was not an isolated incident. Defendant was a third felony offender. Thus, under Harmelin, no proportionality review is necessary. However, if this court conducted such a review, based upon the facts in this record, we would find that the sentence imposed by the trial court was tailored to both the offender and the offense, and was not excessive. This court finds no merit in defendant's assignment of error.

Patent Error
We have discovered a patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing sentence, gave defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.Code Cr. P. art. 880. Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find patent sentencing error and amend the sentence to reflect that defendant is to be given credit for time served prior to the execution of his sentence. See La.Code Cr. P. art. 882(A). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served on the life sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992).
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, AS AMENDED; AND, CASE REMANDED WITH ORDER.
NOTES
[1] The Honorable Ralph E. Tyson, Judge, 19th Judicial District Court, is serving as judge pro tempore by special designation of the Louisiana Supreme Court.
[2] Although the record contains references which spell defendant's middle name with a C, there is also a specific statement by defendant that he spells his middle name with a K.
[3] The statute was amended by 1995 La. Acts No. 1245, § 1, effective August 15, 1995, to change "and each of the two prior felonies" to "or either of the two prior felonies."
[4] Justice Scalia (joined by Chief Justice Rehnquist) wrote the lead opinion and called for the overruling of Solem v. Helm. He rejected any notion that the Eighth Amendment required a proportionality review of criminal sentences. Harmelin, 501 U.S. at 964-66, 974-76 & 984-85, 111 S.Ct. at 2686, 2691 & 2696. However, Justice Kennedy (joined by Justices O'Connor and Souter), relying on stare decisis, adhered to the proportionality principle identified in Solem v. Helm but determined that, because of the severity of petitioner's crime, it was not necessary to analyze the other two factors cited in Solem v. Helm. Harmelin, 501 U.S. at 995-97 & 1004-06, 111 S.Ct. at 2702 & 2707. Justice Kennedy wrote that "only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" is it necessary to compare punishments for other crimes in the same jurisdiction or compare other jurisdictions' treatment of the same crime. Harmelin, 501 U.S. at 1004-06, 111 S.Ct. at 2707. Only the four dissenters considered all three of the factors cited by Solem v. Helm to be essential in each case.
[5] The proportionality review conducted under the Eighth Amendment to the United States Constitution does not consider the nature of the offender. See Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).