668 So.2d 462 (1996)
STATE of Louisiana
v.
Stanley GORDON, III.
No. 95-KA-1247.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
*463 Harry F. Connick, District Attorney of Orleans Parish, Val M. Solino, Assistant District Attorney of Orleans Parish, New Orleans, for appellant.
Arcenious F. Armond, Jr., Gretna, for defendant/appellant.
Before CIACCIO, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
On September 15, 1994, Officers Derek Sino and Richard Mungua initiated a traffic stop after observing Stanley Gordon, III, run a stop sign. When Officer Mungua approached the car on the driver's side, Gordon presented an NOPD identification card. Upon observing that the photo of Gordon appeared to be taped on top of the original photo, Officer Mungua removed the photo and observed the photo of Officer Henry Marshall. When the officers requested Gordon's drivers license, registration, and proof of insurance, he motioned towards a brown organizer laying on the front seat, indicating that the officers could find the documents in the organizer. The organizer contained a copy of a temporary drivers license issued by the traffic court with an expiration date of September 27, 1994, and bearing the name and purported signature of Officer Henry Marshall.[1]
Gordon was charged by bill of information with one count of impersonating a police officer and one count of forgery. After a trial by jury, he was convicted on both counts. Gordon was sentenced to concurrent terms of imprisonment of twenty months and forty months, respectively, on the impersonation and forgery convictions. The State filed a multiple bill on the forgery conviction, Gordon admitted to being a fourth felony offender under the Habitual Offender statute, and the trial court again imposed a forty month term of imprisonment to be served concurrently.
On appeal, Gordon challenges the sufficiency of the evidence underlying both convictions. The State also appeals, contending that Gordon was improperly sentenced to a *464 term below the statutorily mandated sentence.

Assignment of Error No. 1
First, Gordon contends that because no evidence was introduced that he was wearing a police uniform or showed a police badge, his conviction for impersonation of a police officer is invalid.
La.Rev.Stat.Ann. 14:112 (West 1986) provides in pertinent part:
False personation is the performance of any of the following acts with the intent to injure or defraud, or to obtain or secure any special privilege or advantage:
(1) Impersonating any public officer, or private individual having special authority by law to perform an act affecting the rights or interests of another, or the assuming, without authority, of any uniform or badge by which such officer or person is lawfully distinguished....
Thus, contrary to Gordon's argument, impersonating an officer is an act unto itself and does not require a showing that he wore a uniform or carried a badge. Gordon admitted at trial that he had pasted his photo on top of Officer Marshall's NOPD identification card and that he had possessed the card for approximately eight years.[2] The arresting officer testified that when he asked Gordon for his license, registration, and proof of insurance, Gordon "automatically handed me the I.D. card" and that "[t]herefore, I was taking it that he was a police officer." Viewing this evidence in the light most favorable to the prosecution, any reasonable juror could have found that, upon being stopped for a traffic violation, Gordon impersonated a police officer with the intent of obtaining a special privilege or advantage.
Gordon also challenges the sufficiency of the evidence underlying his forgery conviction. La.Rev.Stat.Ann. 14:72 (West 1986) provides in pertinent part:
Forgery is the false making or altering,[3] with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Gordon contends that the conviction is invalid because a copy of a temporary drivers license has no legal efficacy. We disagree. Efficacy is defined as the "[p]ower or capacity to produce the desired effect" or the "ability to achieve results." The American Heritage Dictionary of the English Language (New York 1973). The Reporter's Comment accompanying La.Rev.Stat. 14:72 makes clear that it is not necessary for the forged writing be one that, if genuine, would be a basis for legal liability. To the contrary, according to the commentator, "purporting to have legal efficacy" should be broadly construed, including but not limited to licenses, tickets of admission, letters of recommendation, and receipts.
Thus, while it is clearly illegal to operate a motor vehicle unless one has been issued a drivers license, La.Rev.Stat.Ann. 32:401 (West 1989), the issue before us is not whether a copy of a temporary license constitutes a legal license but whether the copy of the temporary license (like the altered police identification card) had the capacity to produce the results desired by Gordon. Gordon was initially stopped because he ran a stop sign. Upon being asked to produce his drivers license, registration, and proof of insurance, Gordon told the officer that his driver's license was in an "organizer" on the front seat of his car. The officer found the copy of a temporary drivers license in the name of Henry Marshall which was purportedly valid until September 24, 1994. The jury could have concluded that Gordon offered the copy of the temporary drivers license in Henry Marshall's name as proof that he (Gordon) had a valid license to operate a motor vehicle. Under these circumstances, the copy of the temporary drivers license had the requisite legal efficacy.
Defense counsel contended at oral argument, however, that the State did not establish *465 the requisite intent to defraud. He argued that Gordon's organizer contained a traffic ticket issued in his own name nine days prior to the traffic stop in question and, accordingly, Gordon did not intend to present the fraudulent temporary drivers license in Marshall's name. The record indicates, however, that when counsel attempted to pursue this line of defense in cross-examination of the arresting officer, the officer stated that the ticket was not in the organizer at the time of Gordon's arrest. The jury clearly made a credibility determination on this issue which we will not disturb on appeal.[4]
Accordingly, this assignment of error is without merit.

Assignment of Error No. 2
Gordon raises a second assignment of error, asserting that the trial court erred by allowing the introduction of certain documents into evidence. He fails to argue this assignment, however, stating only that the State "submitted all of their exhibits over the objection of the defense," without indicating what evidence was introduced and how the introduction of that evidence prejudiced the appellant. Assignments of error not briefed are deemed abandoned. State v. Bray, 548 So.2d 350 (La.App. 4th Cir.1989); Rule 2-12.4, Uniform Rules, Courts of Appeal. Therefore, we do not consider this issue.

State's Assignment of Error
Finally, the State appeals Gordon's sentence,[5] arguing that the trial court erred in not sentencing him as a fourth offender under the Habitual Offender Law to the mandatory minimum of twenty years. See La.Rev.Stat.Ann. 15:529.1 A(2) (West Supp. 1995). The State indicated at oral argument that although this case clearly falls within the realm of State v. Dorthey, 623 So.2d 1276 (La.1993), the trial court's reasons for departing below the statutory mandatory minimum was inadequate under Dorthey.
Although Dorthey gives almost no guidance as to how detailed a trial court must be when explaining the basis for its decision that the statutory minimum sentence is constitutionally excessive as to the individual defendant, for purposes of appellate review it is generally necessary for some articulation as to (1) whether the sentence contributes measurably to acceptable goals of punishment or amounts to nothing more than imposition of pain and suffering and (2) whether the statutory minimum sentence is grossly disproportionate to the severity of the crime. In this case, however, a review of the record supports the trial court's determination. Gordon's predicate offenses (theft and forgery) are nonviolent in nature, as is the instant offense, involving no possibility of great bodily harm or death to the victims. See State v. Daniel Hyorth, 95-1181 (La.App. 4th Cir. 9/15/95), 661 So.2d 1059. Under these circumstances, we do not find that the trial judge erred in imposing the 40 month sentence.
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Gordon was placed under arrest for impersonating a police officer and was issued the following traffic citations: (1) no proof of insurance; (2) switched license plate; (3) disregarding a stop sign; and (4) no driver's license.
[2] Gordon claimed that he had attempted to return the card before moving to Atlanta where he lived for approximately six years before returning to New Orleans.
[3] At trial, Officer Marshall indicated that the signature on the license was not his and that he never lived at the address displayed on the license and a handwriting expert identified the signature on the copy of the temporary driver's license as belonging to Gordon. Thus, this element of the offense was clearly established by the State.
[4] We note that the ticket which Gordon argues served as a temporary license was issued for driving without a license. Unless Gordon possessed a valid drivers license (which is not clear from the record), this ticket could not serve as a temporary drivers license.
[5] Although the State did not file a motion to reconsider the sentence as required by La.Code Crim.Proc. art. 881.1 (West Supp.1995), the prosecutor did note an objection at sentencing and filed its motion for appeal six days after the sentence was imposed. Under these circumstances, we deem this issue preserved for appeal. See State v. Kelly, 92-2446 (La.App. 4th Cir. 7/8/94) 639 So.2d 888, 891, writ denied, 94-2087 (La. 1/6/95) 648 So.2d 921.