STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 KA 1267

STATE OF LOUISIANA

VERSUS

RICKY ARMENTOR

JUDGMENT RENDERED: JUL 3 1 2020

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number 4-18-0628 • Section I

The Honorable Fred T. Crifasi, Judge Presiding

* * * * * * *

| | |
|---|---|
| Hillar C. Moore, III<br>*District Attorney* | ATTORNEYS FOR APPELLEE<br>State of Louisiana |
| Dale R. Lee<br>*Assistant District Attorney*<br>Baton Rouge, Louisiana | |
| Cynthia Meyer<br>*Louisiana Appellate Project*<br>New Orleans, Louisiana | ATTORNEY FOR APPELLANT<br>DEFENDANT—Ricky Armentor |

* * * * * * *

BEFORE: MCCLENDON, WELCH, AND HOLDRIDGE, JJ.

Holdridge, J. dissenting and assigns reasons

**WELCH, J.**

The State of Louisiana charged the defendant, Ricky Armentor, by bill of information with two counts of simple burglary, a violation of La. R.S. 14:62. The defendant pled not guilty. Before trial, the State dismissed one count. After a trial by a six-member jury, the defendant was found guilty as charged. The trial court imposed a term of twelve years imprisonment at hard labor, to be served without the benefit of probation or suspension of sentence. The defendant now appeals. For the following reasons, we affirm the conviction, vacate the defendant's sentence, and remand this matter for resentencing.

## STATEMENT OF FACTS

On March 25, 2018, in Baton Rouge, Louisiana, Shawndre Griffin walked out of her house to get something out of her car and was surprised to find a man seated in it with his face on the steering wheel. She initially believed the man may have been dead. She alerted her husband, Jerry Lavergne, who came outside to confront the man. When Lavergne approached to open the car, the man in the car locked the car, at which time Lavergne instructed Griffin to get her key fob for the vehicle. After getting her keys, Griffin stated she attempted several times to unlock the car, but the man kept re-locking it. Eventually, however, Lavergne was able to open the car door after it was unlocked before the man could relock it. The man, later identified in court as the defendant, lunged at Lavergne. In response, Lavergne punched the defendant twice in the right side of his head, causing the defendant to fall to the ground, where he briefly lost consciousness. The defendant also sustained lacerations to his face and head. A recording of Griffin's 911 call was entered into evidence and played for the jury.

Griffin informed the police who investigated the incident that though the defendant had rummaged through her glove box, she did not find anything missing from there. She did notice that the defendant had likely taken all of the loose

2

change from the two cup holders, but she did not know exactly how much it was. Also in the car was a red bag that Griffin described as a "burglary kit." Griffin described the odor of alcohol in her vehicle when she got inside after the defendant had been arrested and noted that he appeared to be intoxicated "in some way[.]" She conceded she told police the defendant told her he thought it was his car.

The police first encountered the defendant lying on the ground. The defendant was found to have $16.41 in change in his pocket. At the scene, Griffin told police she did not think any of that change was hers. The police officer that removed the red bag from Griffin's vehicle stated that the bag contained a set of wire cutters, a pair of pliers, more than one flashlight, and a black stocking cap or long beanie with eye holes cut in it, among other things, which collectively the officer believed could be considered burglary tools. Responding officers also noticed the defendant appeared to be intoxicated or under the influence of narcotics. A bottle of Clonazepam was found on the defendant. The defendant told police he believed he was in Zachary, Louisiana.

## ASSIGNMENT OF ERROR #1: INSUFFICIENT EVIDENCE

The defendant contends the State failed to establish that he had the requisite specific intent to commit burglary. In support, he cites the fact he told police he thought he was in his own vehicle and was visibly intoxicated. The coins found in his possession, he explains, were not established beyond a reasonable doubt to have come from Griffin's car. The State contends the evidence was sufficient where it established through two witnesses that the defendant was unlawfully inside Griffin's vehicle and at least seven dollars in change was missing.

A conviction based on insufficient evidence cannot stand, as it violates Due Process. See U.S. Const. amend. XIV and La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational

3

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979). The **Jackson** standard of review, incorporated in La. C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the trier of fact must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Dyson**, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So. 3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So. 3d 685. When direct evidence is viewed in a light most favorable to the prosecution, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. **State v. Thaddius Brothers**, 2017-0870 (La. App. 1st Cir. 11/1/17), 233 So. 3d 110, 113, writ denied, 2017-2160 (La. 10/8/18), 253 So.3d 803.

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. **State v. Cockerham**, 2017-0535 (La. App. 1st Cir. 9/21/17), 231 So. 3d 698, 705, writ denied, 2017-1802 (La. 6/15/18), 245 So. 3d 1035. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, including an expert. The fact that the record contains evidence that conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a factual conclusion. **State v. Moultrie**, 2014-1535 (La. App. 1st Cir. 12/14/17), 234 So. 3d 142, 146, writ denied, 2018-0134

4

(La. 12/3/18), 257 So. 3d 1252. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Ruffen**, 2018-1280 (La. App. 1st Cir. 2/28/19), 2019 WL 968412, at *4 (unpublished), writ denied, 2019-00564 (La. 9/6/19), 278 So. 3d 971.

Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in La. R.S. 14:60. La. R.S. 14:62(A). To be guilty of simple burglary, a defendant must have the specific intent to commit a felony or theft therein at the time of his unauthorized entry. **State v. Godbolt**, 2006-0609 (La. App. 1st Cir. 11/3/06), 950 So. 2d 727, 730. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. **State v. Cousan**, 94-2503 (La. 11/25/96), 684 So. 2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from defendant's actions and the circumstances of the transaction. **State v. Broaden**, 99-2124 (La. 2/21/01), 780 So. 2d 349, 362, cert. denied, 534 U.S. 884, 122 S. Ct. 192, 151 L. Ed. 2d 135 (2001). The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. **State v. Nixon**, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So. 3d 273, 290, writ denied, 2018-0770 (La. 11/14/18), 256 So.3d 290.

Here, the defendant does not dispute that he was found in Griffin's vehicle and that Griffin had not given him permission to be there. The cases defendant relies on are distinguishable in one significant detail: the defendant in the instant

5

case was found in possession of stolen property.[1] It was Griffin's undisputed and consistent trial testimony that she ordinarily kept a significant amount of change in the cup holders of her car and that most of it was missing following the defendant's entry. She further testified that the glove box of her car had apparently been searched by the defendant. When searched by police, the defendant was found with, among other miscellaneous items, $16.41 in loose change and items described as burglary tools. Forced entry into a vehicle or possession of burglary tools are not elements of the offense. La. R.S. 14:62.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the "fact finder's discretion ... only to the extent necessary to guarantee the fundamental protection of due process of law." **State v. Mussall**, 523 So. 2d 1305, 1310 (La. 1988). Here, based on witness testimony, it was reasonable for the jury to conclude that even though she could not identify specific coins or even verify a specific amount missing, defendant was in possession of money intentionally taken from Griffin's vehicle. Additionally, defendant's actions of having rifled through the vehicle glove box, thwarting Griffin's attempts to unlock the vehicle with her key fob, and attacking Lavergne could have been viewed by the jury as discrediting his statements that he believed he was in his own vehicle. See **State v. Wilson**, 44,586 (La. App. 2nd Cir. 10/28/09), 26 So. 3d 210, 216, writ denied, 2009-2655 (La. 1/28/11), 56 So. 3d 973 (specific intent shown in part by defendant's acts of carrying burglar tools, rifling through the console and glove box of the subject vehicle, and taking money). This assignment of error is without merit.

---

[1] See **State v. Jones**, 426 So. 2d 1323, 1326 (La. 1983) and **State v. Merrell**, 442 So. 2d 713, 715 (La. App. 1st Cir. 1983).

# ASSIGNMENT OF ERROR #2:  JURY INSTRUCTION

The defendant argues the trial court erred when it refused to provide the jury an instruction on an intoxication defense.  Citing testimony regarding the defendant's intoxication by State witnesses, the defendant argues an intoxication instruction was appropriate, and that advance notice was not required where defendant himself did not introduce any evidence of intoxication.  The State, however, argues that no evidence was introduced as to when the defendant illegally entered Griffin's vehicle or regarding when and how much intoxicants defendant consumed.  The State points out that the evidence only related to observations made after the defendant was discovered in the vehicle and attempted to escape.  Additionally, the State posits a failure to give the instruction, even if in error, was harmless.

When "the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime." La. R.S. 14:15(2).  The offense of simple burglary is a specific intent crime. La. R.S. 14:62; **State v. McKinley**, 2010-1515 (La. App. 1st Cir. 3/25/11), 2011 WL 1103394, at *4 (unpublished).  If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk.  La. C.Cr.P. art. 726(A); **State v. Quinn**, 479 So. 2d 592, 596-97 (La. App. 1st Cir. 1985).

Additionally, La. C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case.  Any jury charge must be supported by the evidence, for the trial judge is not required to instruct the jury on abstract

principles of law. **State v. Casaday**, 49,679 (La. App. 2nd Cir. 2/27/15), 162 So. 3d 578, 591, writ denied, 2015-0607 (La. 2/5/16), 186 So. 3d 1162. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. **State v. Tate**, 2001-1658 (La. 5/20/03), 851 So. 2d 921, 937, cert. denied, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational trier of fact. **State v. Haddad**, 99-1272 (La. 2/29/00), 767 So. 2d 682, 689, cert. denied, 531 U.S. 1070, 121 S. Ct. 757, 148 L. Ed. 2d 660 (2001). The inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182 (1993).

During the defendant's cross-examination of a police officer, the trial court sustained the State's objection to defense counsel going into the defendant's level of intoxication as no notice of an intoxication defense had been given as required under La. C.Cr.P. art. 726(A). The trial court denied the defendant's requested specialized jury instruction on an intoxication defense for the same reason, in addition to the fact the court found the jury had not yet heard direct evidence the defendant was intoxicated. The court did allow argument "that is a reasonable inference of the facts that have been presented to this jury[,]" but would not "give an instruction focusing on this issue[.]" Though it conceded some general evidence was introduced at trial that the defendant was intoxicated, none was admitted regarding the extent of intoxication, and the trial court found the evidence of intoxication presented did not rise to a level necessitating a jury instruction.

Here, the trial court did not err in declining to provide a jury instruction for which it found a sufficient basis had not been laid, and where no notice of an intoxication defense had been given to the State as required by La. C.Cr.P. art. 726(A). Additionally, while there was some evidence presented that the defendant appeared intoxicated at the time he was discovered in Griffin's vehicle, there was no evidence presented to establish when the defendant may have consumed any alcohol or other intoxicants. See **State v. Sullivan**, 49,183 (La. App. 2nd Cir. 8/13/14), 146 So. 3d 952, 959-60 (after failure to give notice of defense, trial court properly refused to allow the defendant to assert defense of voluntary intoxication or give jury instruction on that defense because to do so would have prejudiced the State, which was prevented from preparing evidence tending to prove that defendant's level of intoxication did not preclude the presence of the specific intent); **State v. Netter**, 2011-202 (La. App. 5th Cir. 11/29/11), 79 So. 3d 478, 482-83, writ denied sub nom., **State ex rel. Netter v. State**, 2012-0032 (La. 8/22/12), 97 So. 3d 357 (where no urine or blood tests were performed, and only testimony suggesting intoxication that defendant could have been intoxicated prior to burglary was that of one witness, and this testimony was contradicted by that of two police officers, intoxication jury instruction properly denied); cf. **State v. Mart**, 352 So. 2d 678, 681 (La. 1977) (where there was "evidence of the extensive pre-crime drinking, coupled with the bizarre behavior before and at the time of the crime, constituted appreciable evidence from which the jury might draw the inference that the accused was intoxicated[,]" warranting jury instruction on intoxication).

Furthermore, even assuming *arguendo* that had the court so erred, as noted above, the State presented evidence the defendant possessed tools for burglary, locked the doors to prevent his removal, and took loose change from inside Griffin's vehicle while he was inside. Though the defendant argued both at trial

and here that he was merely in Griffin's vehicle by mistake, an intoxication instruction would do nothing to address the fact defendant rummaged through the car and committed a theft. This claim is without merit.

## ASSIGNMENT OF ERROR # 3: EXCESSIVE SENTENCE

The defendant claims the trial court sentenced him excessively when it ordered him to serve twelve years imprisonment at hard labor, to run consecutive to a sentence he was already serving. The defendant argues that maximum sentences should be reserved for the worst offenders and most serious offenses. The State responds both that the sentence "was imposed in accordance with established precedent[,]" and that the defendant waived the claim when he failed to make this specific claim in a motion to reconsider sentence. The maximum term of imprisonment provided in La. R.S. 14:62 for a conviction of simple burglary is twelve years, with or without hard labor.

A thorough review of the record indicates the defendant did not make or file a motion to reconsider sentence based on any specific ground following the trial court's imposition of the sentence.[2] However, due to patent sentencing error to be addressed below, we pretermit discussion of this assignment of error as moot.

## ASSIGNMENT OF ERROR # 4: DEFECTIVE JURY VENIRE

In his final assignment of error, the defendant argues he was denied due process where the jury venire in East Baton Rouge Parish was defectively constituted. Citing the Louisiana Supreme Court's recent decision in **State v. Cannon**, 2019-590 (La. 4/18/19), 267 So. 3d 585 (*per curiam*), the defendant argues his jury venire was made deficient by the same process and was not a fair cross-section of the community where those born after June 2, 1993, were

---

[2] Under La. C.Cr.P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See **State v. Mims**, 619 So. 2d 1059 (La. 1993) (*per curiam*). Defendant, ordinarily, would be procedurally barred from having this assignment of error reviewed because he failed to file a motion to reconsider sentence after being sentenced. See **State v. Campbell**, 2016-1349 (La. App. 1st Cir. 4/12/17), 217 So. 3d 1197, 1198.

excluded from the jury pool. Consequently, the defendant seeks to have his conviction vacated and the case remanded for a new trial before a jury selected from a new, properly-constituted, venire. The State notes the defendant failed to file a motion to quash before trial and that he failed to demonstrate the new fact at the heart of his motion was not discovered before trial, despite the exercise of reasonable diligence.

The Louisiana Supreme Court held in **Cannon**, 267 So. 3d at 585-86:

> Defendant has shown that, under the system employed in East Baton Rouge Parish, persons born after June 2, 1993, otherwise qualified to serve on the jury, were never given an opportunity to serve, because their names were excluded from the general venire as a result of a significant error in the process by which the general venire was composed. That exclusion resulted in a general venire that was improperly constituted under Code of Criminal Procedure articles 401 et seq. and Louisiana Constitutional Articles I, § 3 ("No person shall be denied the equal protection of the laws.") and V, § 33 ("A citizen of the state who has reached the age of majority is eligible to serve as a juror within the parish in which he is domiciled."). Accordingly, we grant defendant's application to reverse the rulings of the courts below, grant defendant's motion to quash the general venire, and remand to the district court for further proceedings so that a petit jury can be chosen from a general venire that is selected according to law. See **State v. Jacko**, 444 So.2d 1185 (La. 1984); **State v. Procell,** 332 So.2d 814 (La. 1976).

The **Cannon** decision does not provide grounds to disregard the defendant's failure to follow the proper procedure for raising a jury venire challenge. See **Griffith v. Kentucky**, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987) (wherein the Court held that "a *new rule* for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." (Emphasis added)). We do not find that such a "new rule" was pronounced by the Louisiana Supreme Court in **Cannon**.[3]

---

[3] In **Cannon**, the Louisiana Supreme Court expressly characterized the error in the East Baton Rouge Parish jury selection process as being "persons...otherwise qualified to serve on the jury, *were never given an opportunity to serve.*" **Cannon**, 267 So. 3d at 585-86 (emphasis added).

11

Furthermore, in **State v. Smith**, 2017-1333 (La. App. 1st Cir. 2/21/18), 2018 WL 1007350, at *4 (unpublished), writ denied, 2018-0405 (La. 2/18/19), 265 So. 3d 771, this court noted:

> The proper procedural vehicle for alleging that the general or petit jury venire was improperly drawn, selected, or constituted is a motion to quash. La. C.Cr.P. art. 532(9). A motion to quash based on the ground that the petit jury venire was unconstitutionally drawn should be filed in writing prior to the beginning of the jury selection. See La. C.Cr.P. arts. 521, 532(9), and 535(C); see also **State v. Pooler**, 96-1794 (La. App. 1st Cir. 5/9/97), 696 So.2d 22, 39, writ denied, 97-1470 (La. 11/14/97), 703 So.2d 1288. Herein, the record shows that the defendant did not move to quash the petit jury venire by oral or written motion. Thus, the defendant did not properly raise his challenge to the jury venire's composition. Any grounds for that potential motion were waived. See La. C.Cr.P. art. 535(D).

Here, the defendant did not file such a pretrial motion to quash and did not raise the issue before *voir dire* began. In fact, the defendant did not raise the issue until a motion for new trial, filed after his conviction. See generally, La. C.Cr.P. art. 841; **State v. Thibodeaux**, 2016-0994 (La. 10/27/17), 227 So. 3d 811, 812 (*per curiam*) (citing **Segura v. Frank**, 93-1271 (La. 1/14/94), 630 So. 2d 714, 725, cert. denied sub nom., **Allstate Ins. Co. v. Louisiana Ins. Guar. Ass'n**, 511 U.S. 1142, 114 S. Ct. 2165, 128 L. Ed. 2d 887 (1994)). Consequently, the defendant's claim of a defective jury venire is not properly before the court and is denied as waived. See **State v. Thomas**, 2019-0409 (La. App. 1st Cir. 10/25/19), 289 So. 3d 1030, 1044.

---

And as indicated by the Court's citation to **Jacko** and **Procell** in that opinion, the Court has long criticized and banned any practice that violates the right of potential jurors to serve. Hence, the Court's decision in **Cannon** is simply a re-affirmation of its established rulings proscribing any practice that violated the right of potential jurors to serve and is not a "new rule." We also note that the defendants in **Jacko** and **Procell**, like the defendant in **Cannon**, each asserted their challenges to their respective jury venires with a timely-filed motion to quash. See **Jacko**, 444 So. 2d at 1185 and **Procell**, 332 So. 3d at 815.

## PATENT ERROR

This court has conducted an independent review of the entire record in this matter, including a review for error under La. C.Cr.P. art. 920(2). Our review has revealed the existence of a patent sentencing error in this case. Defendant filed a motion for new trial, and the trial court denied it immediately before sentencing defendant. Louisiana Code of Criminal Procedure article 873 mandates, in relevant part that "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled." Herein, the trial court erred by sentencing defendant immediately after ruling on the motion for new trial. Moreover, analysis of the record fails to reveal even an implicit waiver of the sentencing delay by defense counsel. At most, counsel did not contest moving on to sentencing immediately following the denial of his motion for new trial. See **State v. Kisack**, 2016-0797 (La. 10/18/17), 236 So. 3d 1201, 1205 (*per curiam*), cert. denied, ___ U.S. ___, 138 S. Ct. 1175, 200 L. Ed. 2d 322 (2018) ("implicit waiver . . . runs afoul of the plain language of Art. 873 that requires that the waiver be expressly made.").

Nevertheless, in **State v. Augustine**, 555 So. 2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in Article 873 will be considered harmless error where defendant could not show that he suffered prejudice from the violation, and sentencing is not raised on appeal. See **State v. White**, 404 So. 2d 1202, 1204-05 (La. 1981). However, under our jurisprudence and the present circumstances, the sentence must be vacated and the case remanded for resentencing. See **State v. Gardner**, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So. 3d 265, 270-71 (holding that because the sentence imposed was not a mandatory one and defendant challenged his sentence on appeal, the sentence imposed had to be vacated and the case remanded so that a sentence could be legally imposed). Because the

13

defendant challenges his maximum sentence on appeal, the trial court's error cannot be considered harmless. Therefore, under these circumstances, we find that we must vacate the defendant's sentence and remand the matter for resentencing. Because the sentence has been vacated, the defendant's third assignment of error raising the issue of excessive sentence is moot. See **State v. Parry**, 2007-1972 (La. App. 1st Cir. 3/26/08), 985 So. 2d 771, 777.

## DECREE

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

STATE OF LOUISIANA

VERSUS

RICKY ARMENTOR

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 1267

 **HOLDRIDGE, J., DISSENTING**

I respectfully dissent. In **Taylor v. Louisiana**, 419 U.S. 522, 530-31, 95 S.Ct. 692, 697-98, 42 L.Ed. 2d 690 (1975), the United States Supreme Court said that:

> We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. **Duncan v. Louisiana**, 391 U.S., at 155-156, 88 S.Ct., at 1450-1451. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system. Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial. 'Trial by jury presupposes a jury drawn from a pool broadly representative of the community as well as impartial in a specific case. . . . (T)he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility.' **Thiel v. Southern Pacific Co.**, 328 U.S. 217, 227, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting).

The exclusions of all individuals who were born after June 2, 1993, from criminal juries in East Baton Rouge Parish excluded a large, identifiable segment of the community from jury participation. Said exclusion, especially for a criminal defendant who is a member of the excluded group, denies a defendant his fundamental right to a constitutionally guaranteed jury trial. See **State v. Cannon**, 2019-590 (La. 4/18/19), 267 So.3d 585, 585-86 (per curiam).

I would remand this matter to the trial court for a full evidentiary hearing on the defendant's motion for new trial. At said hearing, the defendant and state should be allowed to introduce evidence as to whether the defendant, who is not in the excluded age-class, was denied a fundamental constitutional right by the exclusion from his jury pool of all prospective jurors who were born after June 2, 1993, and whether those facts could have been discovered before trial with the exercise of reasonable diligence.